IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAKOTA CLAY AHLGRIM,

      Petitioner,

v.                                                                Civ. No. 12-1016 RB/GBW

JAMES LOPEZ and ATTORNEY GENERAL
OF THE STATE OF NEW MEXICO,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      This matter is before the Court on Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, *doc. 1*.  Plaintiff has alleged seven grounds for relief.  *See id*.  I recommend that four be dismissed for failure to state a claim cognizable in a § 2254 petition and that the remaining three be dismissed on the merits.

I.     BACKGROUND

      On February 13, 2009, Petitioner, then seventeen years old, pled guilty to one count of Aggravated Battery (Deadly Weapon) in the Eleventh Judicial District Court of New Mexico, Children's Court Division. *Doc. 7*, ex. A.  Pursuant to the plea agreement, Petitioner's sentence depended on the outcome of a hearing to determine whether Petitioner was amenable to treatment and rehabilitation as a child.  *Id*., ex. A at 1.  If, after the hearing, Petitioner was sentenced as an adult, he agreed to serve a nine year

1

sentence. *Id*. If sentenced as a child, he agreed to serve a two year commitment to the custody of the New Mexico Children, Youth and Families Department, which could be extended until Petitioner reached age twenty-one. *Id*.

On December 3, 2009, Judge Sandra A. Price held an amenability hearing. She found that Petitioner was not amenable to treatment or rehabilitation as a child and that he was not eligible for commitment to an institution for children with developmental disabilities or mental disorders. *Id*., ex. C at 8. She therefore sentenced Petitioner to nine years of incarceration followed by two years of parole. *Id*., ex. C at 9.

Beginning on October 28, 2010, Petitioner filed a series of habeas petitions. *See id*., ex. G. Petitioner was granted leave to amend his first petition and filed the amended petition on June 9, 2011. *Id*., ex. H. Judge Price found that the petition was "wholly inadequate for review" and permitted Petitioner to file a second amended petition. *Id*., ex. I at 36-37.

Petitioner filed his second amended habeas petition on December 2, 2011. *Id*., ex. J. The petition listed four grounds for relief: (1) ineffective assistance of counsel, based on his trial attorney's failure to prevent law enforcement from entering the wrong bandanna into evidence; (2) guilty plea obtained through coercion, based on the fact that Petitioner signed the plea agreement in reliance on his trial attorney's assertion that Petitioner would be sentenced as a juvenile regardless of the outcome of the amenability hearing; (3) breach of the plea agreement, based on Judge Price's refusal to

find that Petitioner was amenable to treatment as a juvenile despite expert testimony to the contrary; and (4) excessive punishment, because a nine year sentence is inappropriate given Petitioner's age and the fact that it was his first conviction. *Id.*, ex. J at 38, 42. Judge Price denied the petition on February 7, 2012. *Id.*, ex. K.

On February 29, 2012, Petitioner filed a Petition for Writ of Certiorari in the Supreme Court of New Mexico challenging Judge Price's denial of his habeas petition. *Id.*, ex. N. In his writ petition, Petitioner alleged the same four grounds that he raised in his original habeas petition. *Id.*, ex. N at 3-7. He further alleged that he was not properly Mirandized upon arrest and that his right to equal protection was violated because he was sentenced as an adult whereas others his age who commit more serious crimes are sentenced as juveniles. *Id.*, ex. N at 8. On May 17, 2012, the Supreme Court denied Petitioner's Petition for Writ of Certiorari. *Id.*, ex. P.

Eight days later, on May 25, 2012, Petitioner filed a second habeas petition in the Eleventh Judicial District Court ("May 2012 petition"). *Id.*, ex. Q. This petition included five grounds: (1) ineffective assistance of counsel, based both on his trial counsel's alleged conflict of interest due to his friendship with the Deputy District Attorney and counsel's statement that Petitioner would be sentenced as a juvenile regardless of the outcome of the amenability hearing; (2) an "inadequate reporter's record," based on the insufficiency of his hearing transcripts; (3) the failure of the police to read Petitioner his Miranda rights; (4) Judge Price's alleged conflict of interest due to her friendship with

3

the Deputy District Attorney and her failure to recuse herself from Petitioner's proceedings; and (5) Petitioner's reformed character. *Id.*, ex. Q at 5-9. Judge Price denied this petition on July 13, 2012. *Id.*, ex. R.

Petitioner then filed a third habeas petition on August 6, 2012 ("August 2012 petition"). *Id.*, ex. S. This petition listed five grounds for relief: (1) "trial court errors," alleging that Petitioner was not permitted to speak on his own behalf at his sentencing hearing and that a jury should have made the amenability determination; (2) "conflict of interest," alleging that Judge Price should have recused herself from consideration of Petitioner's May 2012 petition because she "mistakenly perceived" a letter sent to her by Petitioner as threatening; (3) "insufficient evidence" to support Petitioner's plea agreement because no gun was introduced into evidence despite the fact that he was charged with aggravated battery with a deadly weapon; (4) "active case interference," alleging that Petitioner was denied access to mental healthcare while housed at the San Juan County Juvenile Detention Center prior to his amenability hearing and that the denial prevented him from being found amenable to treatment as a juvenile; and (5) "ineffective assistance of counsel," alleging that Petitioner's trial counsel told him he could not directly appeal a guilty plea and that his trial counsel had a conflict of interest because he was friends with the Deputy District Attorney. *Id.*, ex. S at 21-22. On August 24, 2012, Judge William Birdsall denied the petition. *Id.*, ex. T.

Petitioner then filed a second Petition for Writ of Certiorari in the New Mexico

Supreme Court on August 30, 2012, based on Judge Birdsall's denial of Petitioner's

August 2012 petition.  *Id.*, ex. U.  Petitioner alleged that (1) he was denied the right to

speak at his sentencing hearing; (2) there was insufficient evidence to support his plea;

(3) a jury should have made the amenability determination; and (4) his counsel was

ineffective and his hearing was not fair.  *Id.*, ex. U at 36, 38.  Petitioner asked that the

court incorporate the grounds and facts alleged in his August 2012 petition by

reference.  *Id.*, ex. U at 37, 39.  He stated that he was unable to obtain a copy of the lower

court petition to attach to the Supreme Court petition because the clerk of the Eleventh

Judicial District Court refused to provide him a copy unless he paid for it.  *Id*.  On

September 28, 2012, the Supreme Court denied Petitioner's Petition for Writ of

Certiorari.  *Id.*, ex. V.

On that same day, September 28, 2012, Petitioner filed the instant § 2254 petition.

*Doc. 1.*  Petitioner lists five grounds for relief: (1) trial court errors; (2) conflict of interest;

(3) insufficient evidence; (4) active case interference; and (5) ineffective assistance of

counsel.  *Id*. at 3.  In support of those grounds, Petitioner attaches his August 2012

petition and incorporates the factual allegations therein by reference.  *Id*. at 5-12, 17-32.

Respondents filed an answer to Petitioner's § 2254 petition on December 6, 2012.

*Id*.  They argue that Petitioner has failed to exhaust state court remedies because he did

not fairly present his claims to the state trial court and the New Mexico Supreme Court.

*Id*. at 7-8.  Respondents acknowledge that it is possible that Petitioner exhausted state remedies for his ineffective assistance of counsel claims, but argue that in that case the petition should be dismissed as a mixed petition.  *Id*. at 9-10.

II.     ANALYSIS

    A. **Petitioner's claims**

In his § 2254 petition, Petitioner sets forth five grounds for relief: trial court errors, conflict of interest, insufficient evidence, active case interference, and ineffective assistance of counsel.  Two of these grounds—trial court errors and ineffective assistance of counsel—contain two distinct claims.  I construe the petition to allege the following seven claims:

1. Denial of Petitioner's right to speak on his own behalf at his sentencing hearing;

2. Denial of Petitioner's right to a jury determination of whether he was amenable to sentencing as a juvenile rather than as an adult;

3. Failure of Judge Price to recuse herself from presiding over Petitioner's May 2012 habeas petition due to a conflict of interest;

4. Lack of physical evidence to support the charge of Aggravated Burglary (Deadly Weapon), to which Petitioner pled guilty;

5. Failure of the San Juan Juvenile Detention Center to provide mental health services to Petitioner while he was detained there prior to his amenability hearing;

6. Ineffective assistance of counsel due to the fact that counsel told Petitioner that he could not appeal the plea agreement; and

7.  Ineffective assistance of counsel due to the conflict of interest created by counsel's friendship with Deputy District Attorney Brent Capshaw.

**B.  <u>The content of Petitioner's New Mexico Supreme Court writ petition</u>**

Petitioner's August 2012 Supreme Court petition requests that the court incorporate his August 2012 trial court petition into that document.[1] *Doc. 7*, ex. U at 2-3. Mere attachment of a lower court document does not normally constitute fair presentation of the claims therein to a higher state court.  *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (attaching lower court documents does not fairly present claims which are not included within the writ petition itself); *Jernigan v. Jaramillo*, 436 F. App'x 852, 856-857 (10th Cir. 2011) (finding prisoner failed to exhaust remedies when he attached his state habeas petition and resulting state district court order to his writ petition but did not address those claims in the writ petition itself); *Wilkinson v. Timme*, No. 12-1269, 2012 WL 5883336, at *4 (10th Cir. Nov. 23, 2012) (finding prisoner did not fairly present his claims when, instead of asserting them in his state appellate brief, he attached a prior supplemental motion which detailed the claims and referenced the attachment in a footnote). In this case, however, Petitioner specifically requested that the New Mexico Supreme Court "pull up [the trial court] petition and see for yourself because I do not have a copy of my petition because the 11th District Court clerk refuses to send  me an endorsed copy unless I pay for it . . . ."  *Doc. 7*, ex. U at 2.  Elsewhere he asks that the

---

[1] Because none of the grounds raised in Petitioner's first February 2012 writ petition are included in his federal petition, that petition cannot be a source of exhaustion and will not be considered in this order.

court "[p]lease see my petition and the grounds and facts supporting." *Id*. at 38.  In its

order denying Petitioner's Petition for Writ of Certiorari, the Supreme Court did not say

whether it considered the claims asserted in Petitioner's trial court petition.  *Id*. at 42.

Because Petitioner specifically requested that the Supreme Court consider his trial court

petition and because it is unclear if the court did so, I will presume that Petitioner's trial

court claims and arguments were incorporated into his Supreme Court petition.

### C.  Non-cognizable claims

"[A] district court shall entertain an application for a writ of habeas corpus" on

behalf of a person in state custody "only on the ground that he is in custody in violation

of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This

provision sets forth two requirements for claims to be cognizable under § 2254.  First, a

claim must allege a constitutional violation or a violation of a "constitutional

dimension"—that is, "a fundamental defect which inherently results in a complete

miscarriage of justice" or "an omission inconsistent with the rudimentary demands of

fair procedure."  *Hill v. United States*, 368 U.S. 424, 428 (1962); *Wainwright v. Goode*, 464

U.S. 78, 83 (1983).  Second, the claim must challenge the proceedings and conviction

which led to the petitioner's incarceration.  *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir.

1986).  Four of Petitioner's claims fail to meet these requirements and therefore must be

dismissed as non-cognizable.

### i.     *The right to speak on one's own behalf at sentencing*

Petitioner's first ground for relief alleges that the trial court erred in denying him the right to speak on his own behalf at his sentencing hearing.  *Doc. 1* at 21.  That right, however, is neither a constitutional right nor a right that rises to a constitutional dimension.  While Federal Rule of Criminal Procedure 32 provides for the right to speak on one's own behalf at a sentencing hearing—also known as the right of allocution—in federal court, it does not apply in state courts.  *See* Fed. R. Crim. P 32(i)(4)(ii).  Thus, "[a state] trial court's failure to afford a defendant the right of allocution raises neither a jurisdictional or constitutional error cognizable in habeas."  *Scriver v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995) (citing *Hill*, 368 U.S. at 428).  Because it fails to state a constitutional claim, Petitioner's right of allocution claim must be dismissed.

### ii.    *Judge Price's alleged conflict of interest*

Petitioner next alleges that Judge Price should have recused herself from presiding over his May 2012 habeas petition because of a conflict of interest arising from a letter Petitioner sent to her.  *Doc. 1* at 21.  In the letter, sent on May 16, 2012, Petitioner expressed outrage at his sentence and claimed to possess photos of Judge Price.  *Id.* at 25.  Petitioner claims that Judge Price "mistakenly perceived" the letter as "threatening," and infers that because of the letter, Judge Price was biased against him. As evidence of this bias, Petitioner cites the following sequence of events: the Judge's staff forwarded the letter to the prison warden on July 5, 2012; on July 12, 2012, the

warden allegedly took away Petitioner's personal property; and on July 13, 2012, Judge

Price denied Petitioner's habeas petition.  *Id*.

As discussed above, challenges to post-conviction proceedings in state court are

not cognizable under § 2254.  *Sellers*, 135 F.3d at 1339; *United States v. Dago*, 441 F.3d

1238, 1248 (10th Cir. 2006).  Under § 2254, federal courts can only review claims

challenging the proceedings and judgment that provide the basis for a petitioner's

incarceration.  *Sellers*, 135 F.3d at 1339.  An allegation of bias during post-conviction

proceedings "has no bearing upon the validity of [petitioner's] conviction."  *Valdez v.*

*Jones*, 406 F. App'x 286, 293 (10th Cir. 2010) (finding claim that judge was biased against

petitioner during post-conviction proceedings non-cognizable).  Because Petitioner's

conflict of interest claim alleges Judge Price was biased when considering his May 2012

habeas petition, not while presiding over his plea and sentencing, it involves only post-

conviction matters and must therefore be dismissed.

### iii.   *Insufficient evidence*

Petitioner next alleges that he was "bamboozled into signing a plea for

Aggravated Burglary w/ a deadly weapon, to wit a handgun which was never even

introduced into evidence."  *Doc. 1* at 21.  Without the gun, he argues, there was

insufficient evidence to support the aggravated burglary charge.  *Id*.  "[T]he necessity

for a factual basis to support a guilty plea in a state court proceeding is a matter of state,

not federal, law."  *Berget v. Gibcon*, 188 F.3d 518, at *5 (10th Cir. 1999) (citing *Freeman v.*

*Page*, 443 F.2d 493, 497 (10th Cir. 1971)); *see also Meyers v. Gillis*, 93 F.3d 1147, 1151 (3d

Cir. 1996); *Higgason v. Clark*, 984 F.2d 203, 207-08 (7th Cir. 1993); *Rodriguez v. Ricketts*, 777

F.2d 527, 528 (9th Cir. 1985); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984).  Because

"the requirement of a factual basis for a guilty plea is not rooted in the federal

Constitution . . . it is not redressable under 28 U.S.C. § 2254."  *Id.*

The only exception to this rule is when a defendant protests his factual innocence

**while** pleading guilty in state court, thereby raising the constitutional issue of whether

the plea was voluntary.  *Berget*, 188 F.3d 518 at *5; *see also Walker v. Champion*, 162 F.3d

1175, *2 (10th Cir. 1998); *see, e.g. North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  In this

case, however, Plaintiff argues only the following:

> How could I plead guilty to Aggravated Burglary w/ a deadly weapon, to
> wit a handgun and also receive firearm enhancement charges if there is no
> physical evidence. Word of mouth can't be sufficient enough, even if I said
> it was a firearm that was used, my word wasn't held seriously when at
> first I claimed innocents [sic], so why would my word be held seriously
> through the trial at all.

*Doc. 1* at 21.  This vague reference to "at first claim[ing] innocents [sic]" is not an

allegation that Petitioner in any way resisted signing the plea agreement, let

alone protested his innocence when he pled guilty.  Indeed, it appears to be an

admission that Petitioner confessed to using a firearm at some point during the

trial court proceedings.  There is no evidence in the record before the Court that

indicates Petitioner suggested that he was innocent when he signed the plea

agreement.  In fact, the opposite is true: the trial court's approval of the plea

11

agreement states that the court determined that "[t]here exists a basis in fact for believing the Child committed the offenses charged." *Doc. 7*, Ex. A at 4. This Court "[can]not act as [Petitioner's] advocate": it cannot "supply arguments or scour the record for error" on Petitioner's behalf. *United States v. Rivers,* 2012 WL 3667450, at *2 (10th Cir. Aug. 28, 2012) (citing *Yang v. Archuleta,* 525 F.3d 925, 927 n.1 (10th Cir.2008). Because Petitioner has not alleged that he protested his innocence while signing the plea agreement, his insufficient evidence claim is not cognizable under § 2254 and must be dismissed.

### iv.   *Denial of mental health services*

In his fourth claim, titled "active case interference," Petitioner alleges that he was denied access to mental health services while housed at the San Juan County Juvenile Detention Center, despite requesting psychiatric care numerous times. *Doc. 1* at 22. He claims that the denial prevented him from being found amenable to treatment as a juvenile. *Id.* In support of this claim, Petitioner refers only to New Mexico's Children's Mental Health and Developmental Disabilities Act, N.M. Stat. 32A-6A-1 *et seq*; he cites no federal basis for this claim. "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also* 28 U.S.C. § 2254(d)(1). Because Petitioner's denial of mental healthcare claim is grounded solely in state law, it is not cognizable before this Court and must be dismissed

### D. **Exhaustion of remaining claims**

Having found that four of Petitioner's grounds for relief are not cognizable

before this Court and should be dismissed, I now turn to his three remaining claims—

the right to a jury at his amenability hearing and the two ineffective assistance of

counsel claims.  A federal court cannot grant a petition for habeas corpus under § 2254

unless the petitioner "has exhausted the remedies available in the courts of the State."

28 U.S.C. § 2254(b)(1)(A).  Rather than draft a new petition arguing his claims directly to

this Court, Petitioner has attached his August 2012 petition to his § 2254 petition as

"Attachment A."  *See doc. 1.*  Because Petitioner's federal petition contains no additional

argument or facts, his § 2254 claims are identical to those in his state trial court petition.

And because, as explained above, I am assuming that Petitioner's trial court claims were

incorporated into his Supreme Court petition, the grounds asserted in that petition are

also identical to those asserted in his trial and federal petitions.  Exhaustion, then, turns

not on whether Petitioner's claims were presented to the state courts, but rather on

whether those claims were *fairly presented*.

Respondents admit that Petitioner's ineffective assistance of counsel claim may

be exhausted because it "*might* arguably be recognized as asserting a claim for a Sixth

Amendment violation."  *Doc. 7* at 8.  However, Respondents argue that "none of Mr.

Ahlgrim's other four grounds for relief alleges supporting facts sufficient to put the

state courts on notice that Mr. Ahlgrim believes his rights under the United States

13

Constitution have been violated." *Id*.  I disagree and find that Petitioner's claim of a right to a jury at his amenability hearing and his two claims of ineffective assistance of counsel are exhausted.

### i.  The fair presentation requirement

In order to properly exhaust state remedies as required by 28 U.S.C. § 2254, a prisoner must "fairly present" his *federal* claims to the state courts.  "'Fair presentation' of a prisoner's [federal] claim to the state courts means that the substance of the claim must be raised there." *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997).  Because the purpose of the exhaustion requirement is to "give the state courts one full opportunity to resolve any constitutional issues," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), the petition must alert state courts "to the fact that the prisoner is asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)) (internal brackets omitted).  The petitioner need not "cite 'book and verse on the federal constitution,'" *Berg v. Foster*, 244 F. App'x 239, 244 (10th Cir. 2007) (quoting *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006)), but "[t]he federal quality of the rights asserted [must be] sufficiently discernable to fairly apprise the [state] court of the federal nature of [petitioner's] claims." *Bowser v. Boggs*, 20 F.3d 1060, 1063 (10th Cir. 1994).

### ii.    The right to a jury at an amenability hearing

Petitioner fairly presented this claim to the state courts because he invoked an instantly recognizable constitutional right—the right to a jury trial—and explicitly referenced federal and state case law that expounds upon that right.  Petitioner alleged in his trial court and Supreme Court petitions that he had a right to have a jury determine whether he was amenable to treatment as a juvenile because, "[i]f a jury had been provided, I am 100% solid that I would have been sentenced as a juvenile."  *Doc. 1* at 21; *Doc. 7*, ex. S at 5, ex. U at 3 .  While Petitioner did not refer to a particular constitutional right or federal law, he did cite both New Mexico and federal case law in both his trial and Supreme Court petitions.  *See doc. 7*, ex. S at 10, ex. U at 3.  In particular, Petitioner cited a New Mexico Court of Appeals case, *State v. Rudy B.*, 216 P.3d 810 (N.M. Ct. App. 2009), which held that a jury is required to make factual findings in an amenability hearing.  The court's holding was based on its understanding of U.S. Supreme Court case law addressing when the Sixth Amendment requires a jury to make findings that affect sentencing.  *Id*. at 815-25.  Petitioner also cited *Apprendi v. New Jersey*, in which the Supreme Court held that defendants have a Sixth Amendment right to have a jury determine "any fact that increases the penalty for the crime beyond the prescribed statutory maximum."  530 U.S. 466, 490 (2000).

These citations, taken together with Petitioner's explicit allegation that a jury should have made his amenability determination, are sufficient to notify the state courts

of the federal nature of Petitioner's claim.  While Petitioner's explanation of the claim is brief, it calls to mind a specific constitutional right—the right to a jury trial.  When combined with Petitioner's citation of a Supreme Court case, this description would have alerted the state courts to the possibility of a federal claim; looking up the cases cited by Plaintiff would have immediately confirmed it.  *See Baldwin v. Reese*, 541 U.S. 27, 33 (2004) (noting that case citations can alert a state court to the federal nature of a claim).  Moreover, because the claim does not involve a complicated fact pattern—the amenability determination was made either by a judge or a jury – the brevity of Plaintiff's recitation reasonably constitutes fair presentation.  This claim is therefore exhausted.

### iii.   Ineffective assistance of counsel

Petitioner makes two ineffective assistance of counsel claims.  He first alleges that in response to his request to file an appeal, his public defender "told me that I could not appeal because I took a plea agreement."  *Doc. 1* at 22.  His second claim alleges that his public defender had a conflict of interest because he was close friends with Deputy District Attorney Brent Capshaw, whose home Plaintiff was charged with burglarizing.  *Id*.  He argues that his public defender knew that Plaintiff had a right to a jury at the amenability hearing but, in retaliation for the burglary, intentionally failed to request a jury, thereby "set[ting] [Plaintiff] up for failure."  *Id*.

16

I find that these claims were fairly presented to the state courts and are therefore exhausted.  First, the words "ineffective assistance of counsel" have become a term of art indicative of a federal claim under the Sixth Amendment.  *See Baldwin*, 541 U.S. at 33. Second, the two types of misconduct Petitioner alleges—failure to file an appeal and conflict of interest—are archetypal ineffective assistance of counsel claims.  Third, Petitioner cites two on-point federal cases that make the federal nature of his claims clear: *United States v. Martin*, 81 F.3d 1083 (11th Cir. 1996), and *Cuyler v. Sullivan*, 446 U.S. 335 (1980).  In *Martin*, the Eleventh Circuit held that a defendant who pleads guilty has a right to appeal a sentence under the Federal Sentencing Guidelines. *Martin*, 81 F.3d at 1084.  In *Sullivan*, the Supreme Court found that a Sixth Amendment ineffective assistance claim can be premised on an actual conflict of interest. *Sullivan*, 446 U.S. at 350.

The Tenth Circuit addressed a similar situation in *Nichols v. Sullivan*, in which the court held that a petitioner fairly presented his due process fair trial claim to the state court when he cited the Fifth Amendment Due Process Clause in his docketing statement, despite not mentioning due process or citing federal case law anywhere else in his filings.  867 F.2d 1250, 1252-53 (10th Cir. 1989).  The court reasoned that because the petitioner's "state appellate papers referred to the due process clause as a basis for his claim" and because "fairness of trial is a fundamental concern of due process," the state courts had a fair opportunity to consider the petitioner's due process claim.  *Id*. at

17

1253.  The same rationale applies here.  Petitioner used language that invoked the Sixth Amendment ("ineffective assistance of counsel") and described alleged attorney errors of the type typically pled under the Sixth Amendment.  *Cf. Burnett v. Hargett*, 139 F.3d 911, at \*5 (10th Cir. 1998) (finding that petitioner failed to put state courts on notice of ineffective assistance claim when he "camouflaged" the claim and the facts supporting it "within a welter of" unrelated claims).  Petitioner's ineffective assistance of counsel claims are therefore exhausted.

### E.  **Petitioner's exhausted claims are meritless**

Having determined that Petitioner's three cognizable claims are properly exhausted, I now consider them on the merits.  For the reasons below, I find that the state courts' dismissal of the claims was reasonable because all three lack merit.

### i.   *Standard of review*

A federal court can only grant the petition for writ of habeas corpus of a person in state custody if the state court adjudication[2] of the petitioner's claims on the merits resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §

---

[2] A state court's summary dismissal of a claim is presumed to be an "adjudication on the merits" even if the court provided no reasoning to support its decision.  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).  This presumption may be overcome only if "there is reason to think some other explanation for the state court's decision is more likely."  *Id*.  Petitioner has not argued, let alone presented evidence indicating, that the trial court and Supreme Court decisions are not adjudications on the merits.  This Court must therefore presume that they are.

2254(d).  The threshold question under § 2254(d)(1) is whether the law, as developed by

the U.S. Supreme Court, is clearly established.  *House v. Hatch*, 527 F.3d 1010, 1015 (10th

Cir. 2008).  This determination is dispositive of the § 2254(d)(1) analysis—"without

clearly established federal law, a federal habeas court need not assess whether a state

court's decision was contrary to or involved an unreasonable application of such law."

*Id*. at 1017 (internal quotation marks omitted).  "[C]learly established law consists of

Supreme Court holdings in cases where the facts are at least closely-related or similar to

the case *sub judice*."  *Id*. at 1016.  If Supreme Court precedent "gives no clear answer to

the question presented, . . . it cannot be said that the state court unreasonably applied

clearly established Federal law."  *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (citation

omitted).

　　　　If the court determines that there is relevant and clearly established federal law,

it must consider whether the state court decisions are "contrary to" or "unreasonable

applications of" that law.  A state court decision is contrary to clearly established

federal law if the state court (1) "applies a rule that contradicts the governing law set

forth in Supreme Court cases," or (2) "confronts a set of facts that are materially

indistinguishable from a decision of the Supreme Court and nevertheless arrives at a

result different from that precedent."  *House*, 527 F.3d at 1018 (citing *Maynard v. Boone*,

468 F.3d 665, 669 (10th Cir. 2006)).  A state court decision is an unreasonable application

of clearly established federal law if (1) "it identifies the correct governing legal rule

from Supreme Court cases, but unreasonably applies it to the facts," or (2) it "unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply." *Id*. at 1018. An unreasonable application of law is "more than an incorrect application of federal law." *Id*. at 1019.

In order to succeed under § 2254(d)(2), a petitioner must show that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Section 2254(d)(2) . . . is a daunting standard— one that will be satisfied in relatively few cases." *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011) (internal quotation marks omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Rather, it is "whe[n] the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Byrd*, 645 F.3d at 1171-72.

### ii.   Right to a jury at amenability hearing

Relying on *State v. Rudy B.*, 216 P.3d 810 (N.M. Ct. App. 2009), Petitioner argues

that he had a constitutional right to have a jury determine whether he was amenable to

sentencing as a juvenile rather than a judge.  *Doc. 1* at 21.  The trial court dismissed this

claim summarily, stating only that "Petitioner is in error" and citing the New Mexico

Supreme Court's 2010 reversal of that decision, *State v. Rudy B.*, 243 P.3d 726, 746 (N.M.

2010).  *Doc. 7*, ex. T at 1-2.

Petitioner appears to have stumbled upon a live issue; the law regarding whether

a juvenile has a right to have a jury determine the facts underlying his amenability to

sentencing as an adult is far from clearly established.  The argument that juveniles are

entitled to a jury in such circumstances is founded on the U.S. Supreme Court's decision

in *Apprendi v. New Jersey*, 500 U.S. 466 (2000).  In that case, after Mr. Apprendi pled

guilty to three charges, the State moved for a sentence enhancement on one count on

the ground that it was committed with a biased purpose.  *Id*. at 469-70.  The trial judge

held an evidentiary hearing, concluded by a preponderance of the evidence that Mr.

Apprendi had been motivated by racial bias, and applied the sentence enhancement.  *Id*.

at 470-71.  Mr. Apprendi argued on appeal that the bias finding was a factual finding

that should have been proven to a jury beyond a reasonable doubt.  *Id*.  The U.S.

Supreme Court ultimately agreed, holding that "[o]ther than the fact of prior

conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490.

In 2008, the Tenth Circuit considered whether *Apprendi* required that factual findings in a New Mexico state court amenability hearing be made by a jury. *Gonzales v. Tafoya*, 515 F.3d 1097 (10th Cir. 2008). While acknowledging that an amenability hearing affected the length of the sentence imposed, the court distinguished between the types of findings traditionally made by juries and those made at amenability hearings. *Id.* at 1110, 1113. The court found that amenability determinations require making "a series of judgments, weighing a variety of factors rather than merely determining particular facts." *Id*. at 1113. Because *Apprendi* did not address those sorts of determinations, the court held that its jury requirement does not apply to amenability hearings. *Id*. at 1114.

The following year, in *State v. Rudy B.*, the New Mexico Court of Appeals came to the opposite conclusion. The court found that "[t]he fact that an amenability determination is apart from the elements of the charged crime has no bearing on whether *Apprendi* applies because the additional facts necessary to determine whether a youthful offender is amenable to treatment have the potential to increase the offender's sentence." 216 P.3d at 823. Therefore, under *Apprendi*, those findings must be made by a jury. *Id*. at 824.

The New Mexico Supreme Court reversed that decision and sided with the Tenth Circuit, holding that the "predictive nature" of amenability findings and the juvenile context of such hearings distinguish them from the circumstances at issue in *Apprendi*. 243 P.3d at 739. "[B]ecause the amenability determination historically has not been made by the jury, applying *Apprendi* would interfere unnecessarily with New Mexico's traditional discretion in administering juvenile justice." *Id*. at 740.

While the majority of courts to consider the application of *Apprendi* to the sentencing of juveniles as adults have found that juries are not required, at least one court and numerous dissenters have disagreed. *See* Petition for Writ of Certiorari, *Villalon v. Indiana*, 2012 WL 1572487, at *30-*32 (2012) (No. 11-1324) (collecting cases).[3]

The dearth of on-point Supreme Court precedent alone makes clear that there is no "clearly established law" on this issue. *See Carey v. Musladin*, 549 U.S. 70, 74 (2006) ("[C]learly established Federal law in § 2254(d)(1) refers to the holdings . . . of this Court's decisions as of the time of the relevant state-court decision.") (internal quotation marks omitted). The divergent opinions of lower courts, including those of the New Mexico Court of Appeals and the New Mexico Supreme Court, reinforce that point— this is plainly an issue on which "reasonable jurists may differ." *See United States v. Chang Hong*, 671 F.3d 1147, 1153 (10th Cir. 2011). Since a state court's legal determination cannot be unreasonable if there is no clearly established law on the issue,

---

[3] The U.S. Supreme Court denied certiorari on this petition in December 2012. *See Villalon v. Indiana*, No. 11-1324, 2012 WL 1565695 (U.S. Dec. 3, 2012).

the trial court's decision finding Petitioner's claim meritless was necessarily reasonable. *See House*, 527 F.3d at 1017.  Moreover, the court's decision was entirely proper because it was in line with current New Mexico Supreme Court precedent, by which it is bound. *See State v. Rudy B.*, 243 P.3d 726 (N.M. 2010).  Because there is no clearly established law regarding whether Petitioner had a right to a jury at his amenability hearing and because the state court's adjudication of the issue was reasonable, this claim is meritless and should be dismissed.

### iii.   *Ineffective assistance of counsel – failure to appeal plea*

Petitioner claims that his attorney failed to file an appeal of his guilty plea despite Petitioner's request for an appeal.  The state courts dismissed this claim with no analysis, but the Court may assume that they found it meritless.  *See Harrington*, 131 S. Ct. at 784-85.  I must determine whether the state court's dismissal was "contrary to" or an "unreasonable application of" clearly established law or based on an "unreasonable determination of the facts."  *See* 28 U.S.C. § 2254(d).

Under *Strickland v. Washington*, counsel is ineffective in violation of the Sixth Amendment if a petitioner can demonstrate both that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defendant." 466 U.S. 668, 687-88 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (applying *Strickland* to the plea process).  Ordinarily, "a lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both

24

professionally unreasonable and presumptively prejudicial." *United States v. Snitz*, 342

F.3d 1154, 1155-56 (10th Cir. 2003) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)).

This is true even if counsel believed that the appeal was without merit. *United States v.*

*Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007). In this case, the analysis is complicated by

the explicit waiver of the right to appeal in Petitioner's plea agreement. *See doc. 7*, ex. A

at 2. The Tenth Circuit has held that appeal waivers, while generally enforceable, "do[]

not foreclose all appellate review" of a defendant's conviction and sentence. *United*

*States v. Garrett*, 402 F.3d 1262, 1266-67 (10th Cir. 2005). Therefore, if a defendant

"actually asked counsel to perfect an appeal, and counsel ignored the request," counsel

was per se ineffective and "[the defendant] will be entitled to a delayed appeal." *Id*. at

1267.

Because the state court's decision does not set forth the court's reasoning, we do

not know whether it was predicated on a legal determination that a failure to file a

requested appeal is not ineffective assistance under *Strickland* or on a factual

determination that Petitioner did not request an appeal. *See* 28 U.S.C. § 2254(d). The

Court will consider both possibilities. Under the first scenario, Petitioner's claim must

fail because the law on counsel's duty to file a requested appeal of a guilty plea when

the plea agreement contains a waiver of the right to appeal is not clearly established.

While the Supreme Court held in *Flores-Ortega* that counsel was presumptively

ineffective if he failed to file an appeal when expressly asked, the plea agreement at

issue in that case did not contain an appeal waiver.  *See Flores-Ortega*, 528 U.S. at 488 n.1

(Souter, J., concurring in part and dissenting in part) ("[T]here is no claim here that

Flores-Ortega waived his right to appeal as part of his plea agreement.").  The circuit

courts are split on whether *Flores-Ortega* applies when a plea agreement expressly

waives the right to appeal.  The Third and Seventh Circuits, as well as at least two

district courts in the First Circuit, have found that a lawyer is not per se ineffective for

failing to file a requested appeal when the defendant's plea agreement contains a

waiver.  *See United States v. Mabry*, 536 F.3d 231, 240-42 (3d Cir. 2008); *Nunez v. United

States*, 546 F.3d 450, 453 (7th Cir. 2008); *Agosto v. United States*, 2012 WL 3518130, at *11-

*12 (D. Mass. Aug. 15, 2012); *United States v. Falcon*, 2011 WL 777852, at *4-*7 (D.R.I. Feb.

28, 2011).  The seven other circuits have concluded that counsel must file an appeal

when requested, regardless of whether the defendant's plea agreement contains a

waiver.  *See Campusano v. United States*, 442 F.3d 770, 773-77 (2d Cir. 2006); *United States

v. Poindexter*, 492 F.3d 263, 267-73 (4th Cir. 2007); *United States v. Tapp*, 491 F.3d 263, 265-

66 (5th Cir. 2007); *Campbell v. United States*, 686 F.3d 353, 357-60 (6th Cir. 2012); *Watson v.

United States*, 493 F.3d 960, 963-64 (8th Cir. 2007); *United States v. Sandoval-Lopez*, 409

F.3d 1193, 1198 (9th Cir. 2005); *Garrett*, 402 F.3d at 1266-67; *Gomez-Diaz v. United States*,

433 F.3d 788, 793-94 (11th Cir. 2005).  Given this split and the lack of on-point Supreme

Court precedent, it is readily apparent that the law in this area is not clearly established

and that this Court must therefore defer to the state court's decision.

In the second possible scenario, the state court determined that Plaintiff did not, in fact, request his trial counsel to appeal his guilty plea.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This is true even when, as here, the state court's decision lacks any explanation or analysis.  *Harrington*, 131 S. Ct. at 784.  Assuming that the state court determined Petitioner did not request counsel to file an appeal, Petitioner has put forth no evidence suggesting that determination was unreasonable.  There is no indication that the state court misapprehended the record or otherwise erred in making the determination and Petitioner's conclusory allegations alone are not the "clear and convincing evidence" necessary to overcome the presumption that the state court's findings are correct.  *See Bryson v. Ward*, 187 F.3d 1193, 1204 (10th Cir. 1999).  Moreover, pursuant to *Cullen v. Pinholster*, this Court cannot hold an evidentiary hearing to determine for itself whether Petitioner instructed counsel to file an appeal.  131 S. Ct. 1388, 1398 (2011); *see also Black v. Workman*, 682 F.3d 880, 895 (10th Cir. 2012) (extending *Cullen*'s evidentiary hearing bar to claims under § 2254(d)(2)).  The Court's review "is limited to . . . the record before the state court," *Cullen*, 131 S. Ct. at 1398, and that record contains no evidence to support the claim that Petitioner instructed his counsel to file an appeal.  Therefore, the Court must defer to the state court's determination that Petitioner did not expressly request that counsel file an appeal of his guilty plea and

that his counsel was therefore not ineffective under *Strickland*. Because Petitioner's failure to appeal claim fails under both possible scenarios, it must be dismissed.

### iv.    Ineffective assistance of counsel—conflict of interest

Petitioner's second ineffective assistance of counsel claim alleges that his trial counsel had a conflict of interest due to his friendship with Deputy District Attorney Brent Capshaw. *Doc. 1* at 22. Petitioner explains the conflict thusly: "I was brought up on burglary charges while awaiting trial. My Attorney was asked if he wanted to represent me on these charges as well and he declined saying that the victim, Deputy D.A. Brent Capshaw, was his close friend. I believe from then on my counsel's performance was adversely affected because of said conflict." *Id*. Again, I assume that the trial court and New Mexico Supreme Court dismissed this claim on the merits. *See Harrington*, 131 S. Ct. at 784-85.

A defendant can demonstrate that a conflict of interest violated his Sixth Amendment right to counsel in two ways. He can either show that "an actual conflict of interest adversely affected his lawyer's performance," *Sullivan*, 446 U.S. at 350, or that the alleged conflict of interest resulted in ineffective assistance of counsel under the more general rule of *Strickland*. *See Green v. Snedeker*, 355 F. App'x 146, 148-49 (10th Cir. 2009). Because Petitioner does not specify under which standard he brings his conflict of interest claim, and because the state trial court did not say which standard it used to evaluate the claim, I will consider both.

28

### a) Conflict of interest under *Sullivan*

Under *Sullivan*, "the possibility of conflict is insufficient to impugn a criminal conviction"; a defendant must establish that an *actual* conflict of interest adversely affected his lawyer's performance." 446 U.S. at 350 (emphasis added). The conflict at issue in *Sullivan* involved multiple representation—two lawyers represented three co-defendants who were charged with the same crime but tried separately. *Id.* at 338. The Supreme Court has not extended *Sullivan* to situations in which the alleged conflict arises from a situation other than multiple representation. *See Hyberg v. Milyard*, 436 F. App'x 843, 846-47 (10th Cir. 2011) (citing *Mickens v. Taylor*, 535 U.S. 162, 176 (2002)). This lack of clearly established law dealing with a conflict of interest arising out of defense counsel's friendships is sufficient to render Petitioner's claim meritless. *See House*, 527 F.3d at 1016.

Even putting aside the issue of whether the law is clearly-established, the state court's decision to dismiss this claim was not unreasonable because Petitioner's allegations do not demonstrate an actual conflict of interest as required by *Sullivan*. Under the *Sullivan* standard, "[a]n actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client." *United States v. Alvarez*, 137 F.3d 1249, 1252 (1998). "To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances . . . which suggest an impairment or compromise of his interests for the benefit of another party." *Id.* (quotation omitted).

Petitioner does not suggest that his counsel was involved in the representation of Mr. Capshaw or that he was otherwise forced to choose between representing Petitioner's interests or those of Mr. Capshaw.  In fact, rather than adduce the existence of a conflict of interest, Petitioner's allegations indicate that his counsel was acting appropriately and in accordance with the law.

First, the allegation that Petitioner's counsel colluded with Mr. Capshaw to "come up with the Amenability plea" in retaliation for Petitioner's burglary ignores the fact that negotiations between the prosecutor and defense counsel are part of the plea process.  *See doc. 1* at 22.  In fact, Petitioner's defense counsel had a duty to bargain with the prosecutor.  Second, Petitioner alleges that counsel was aware of Petitioner's right to a jury at the amenability hearing but failed to demand one.  The New Mexico Court of Appeals' short-lived decision requiring the use of juries in amenability hearings was issued on July 30, 2009, over five months *after* Petitioner signed the plea agreement on February 13, 2009.  Thus, under New Mexico law at the time of the plea agreement, Petitioner was not entitled to a jury and counsel was acting in accordance with the law when he failed to demand one.  Lastly, Petitioner says that his counsel urged him to take the plea rather than proceed to trial because Petitioner "would get 18 years" if he went to trial.  Petitioner has offered no reasons why counsel's warning of a potential 18 year sentence was inaccurate and an analysis of Petitioner's charges says otherwise.  As part of the plea agreement, four of the five charges against Petitioner were dropped.

*Doc. 7*, ex. A at 1.  If Petitioner had proceeded to trial on all five charges, he likely risked a longer sentence.  *See Holt v. Braco*, 418 F. App'x 697, 701 (10th Cir. 2011) (finding counsel's warning that failure to sign plea agreement would result in issuance of arrest warrant was objectively reasonable because warning was likely true).  The mere fact that Petitioner's trial counsel may have disliked and distrusted Petitioner does not create a conflict of interest, *see Hale v. Gibson*, 227 F.3d 1298, 1313 (10th Cir. 2000),  and Petitioner has offered no evidence indicative of an actual conflict.  His conflict of interest claim under *Sullivan* should be dismissed.

### b)  Conflict of interest under *Strickland*

Whereas under *Sullivan* prejudice is presumed if a defendant demonstrates the existence of an actual conflict of interest that adversely affected his representation, under *Strickland* a defendant must prove that his counsel engaged in objectively unreasonable conduct which prejudiced his case.  *See Green,* 355 F. App'x at 148-51. (comparing *Sullivan* and *Strickland* standards).  As to the first prong of *Strickland*, "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Petitioner claims that his counsel's conflict of interest led to two objectionable actions: (1) counsel's warning that if Petitioner did not sign the plea agreement he risked being sentenced to 18 years at trial and (2) counsel's failure to object to the lack of a jury at the amenability hearing. However, neither of these actions are objectively unreasonable as required by *Strickland*. First, as discussed above, counsel's warning that Petitioner risked a longer sentence if he proceeded to trial may well have been correct. Even if counsel's 18-year estimate was not completely accurate, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996) (quoting *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993)). Second, as explained above, counsel's failure to object to the lack of a jury at the amenability hearing was not unreasonable because under New Mexico law at the time, Petitioner was not entitled to a jury. In light of the foregoing, the state courts' dismissal of Petitioner's conflict of interest claim under *Strickland* was entirely reasonable.

## III.   CONCLUSION

I have found that four of Petitioner's seven claims are not cognizable in a § 2254 petition and should be dismissed. Although Petitioner exhausted state remedies for his remaining three claims, I have found that those claims are meritless and their dismissal by the state courts was reasonable. I therefore recommend that the Court DENY and

DISMISS with prejudice Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas

Corpus by a Person in State Custody, *doc. 1.*


_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**